In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-4300

WISCONSIN VALLEY IMPROVEMENT COMPANY,

*Plaintiff-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 08-cv-378-slc—**Barbara B. Crabb**, *Chief Judge*.

ARGUED MAY 12, 2009—DECIDED JUNE 22, 2009

Before EASTERBROOK, *Chief Judge*, SYKES, *Circuit Judge*,
and VAN BOKKELEN, *District Judge*.[†]

EASTERBROOK, *Chief Judge*. Wisconsin Valley Improve-
ment Company operates dams and other improvements
in or near the Wisconsin River. Some of the dams need
licenses from the Federal Energy Regulatory Commission.

---

[†] Of the Northern District of Indiana, sitting by designation.

When the Company proposed to renew one hydro-power license, the United States Forest Service asked the Commission to condition renewal on steps that would curtail flooding of federally owned lands and compensate the United States for the loss of use. The Company replied that it enjoys flowage easements over these lands—easements that, the Company maintains, arose by the passage of time ("prescription") rather than written conveyances. According to the Company, these easements made the proposed conditions unnecessary and inappropriate.

A brief filed with the Commission in February 1996 rejoined that the Commission is entitled to impose the conditions whether or not the Company has a flowage easement and added that the Forest Service does not concede the Company's claim of a flowage easement. The Commission imposed the requested conditions. A petition for review was denied, for the most part, by *Wisconsin Valley Improvement Co. v. FERC*, 236 F.3d 738 (D.C. Cir. 2001), which agreed with the Commission that the United States' title to the lands allows the Commission to curtail flooding and require compensation whether or not the Company has a flowage easement. *Id*. at 742–43.

Seventeen years after the Forest Service asked the Commission to impose conditions designed to reduce flooding, and more than 12 years after the Forest Service declined to concede that the lands are subject to a flowage easement, the Company filed this suit under the Quiet Title Act, 28 U.S.C. §2409a. The statute of limita-

tions for quiet-title suits against the United States is 12 years. 28 U.S.C. §2409a(g). The district court concluded that the Company's claim had accrued no later than February 1996, when the Forest Service questioned the existence of the asserted flowage easement. Because the suit was not filed until June 2008 it is untimely. 2008 U.S. Dist. LEXIS 98092 (W.D. Wis. Dec. 2, 2008). The district court dismissed the suit under Fed. R. Civ. P. 12(b)(1), ruling that an untimely action against the United States does not come within the court's subject-matter jurisdiction.

On appeal, the United States defends that jurisdictional characterization. The argument starts from the premise that sovereign immunity limits the jurisdiction of the Judicial Branch. Suits against the United States are permissible only when authorized by statute; the period of limitations is a condition on the waiver of sovereign immunity; thus an untimely suit is outside the court's subject-matter jurisdiction. The problem with this argument lies in the premise: Sovereign immunity is not a jurisdictional doctrine. See *United States v. Cook County*, 167 F.3d 381 (7th Cir. 1999). Subject-matter jurisdiction means adjudicatory competence over a category of disputes. See *Kontrick v. Ryan*, 540 U.S. 443 (2004); *Eberhart v. United States*, 546 U.S. 12 (2005). Multiple statutes authorize federal district courts to adjudicate suits arising under federal law in which the United States is a party. See, e.g., 28 U.S.C. §1331, §1346; 5 U.S.C. §702. Section 2409a, in particular, permits the adjudication of quiet-title actions in which the United States claims an interest in real property. No more is needed for subject-

matter jurisdiction. Timely suit is a condition of relief, to be sure, but time limits in litigation do not detract from a court's adjudicatory competence.

*Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990), resolved this point. It held that time limits in employment-discrimination suits against the United States or one of its agencies are subject to tolling and estoppel. That view is incompatible with a "jurisdictional" characterization of a statute of limitations. And *Scarborough v. Principi*, 541 U.S. 401 (2004), extended *Irwin* to other time limits in suits where the United States or an agency is a defendant. After *Irwin*, *Scarborough*, and *Cook County* it is hard to understand how a "jurisdictional" tag may be attached to any period of limitations, whether or not the United States is a party. See, e.g., *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006).

The brief filed by the United States in this appeal does not mention any of the recent cases. Instead it relies on older decisions that used the word "jurisdiction" to describe any mandatory rule. For example, *Munro v. United States*, 303 U.S. 36 (1938), said that an attorney for the United States may not, by oversight, surrender the benefit of a time limit in tax-refund litigation. *Munro*, and many similar cases, instantiate the principle that negligence of a federal employee does not estop the United States to enforce the terms of statutes specifying when funds may be drawn from the Treasury. See, e.g., *Office of Personnel Management v. Richmond*, 496 U.S. 414 (1990). This principle differs from a limit on subject-matter jurisdiction, which a court must enforce even if the

parties stipulate to the court's authority. *Block v. North Dakota*, 461 U.S. 273, 292 (1983), the most recent decision that has used the word "jurisdiction" when referring to the effect of a statute of limitations for suit against the national government, appears to be yet another example of the tendency, discussed in *Kontrick* and *Eberhart*, to employ the word loosely; not every reference to "jurisdiction" in the Supreme Court's large corpus of decisions means "subject-matter jurisdiction" in the contemporary sense.

After *Irwin* and *Scarborough*, time limits affecting suits against the United States are not among the few true jurisdictional rules that the judiciary must raise, and resolve, on its own even if the litigants agree that the suit is timely. Nor should a district court dismiss an untimely suit for want of jurisdiction, implying that plaintiff may present the claim to some other tribunal. The right disposition of a time-barred suit against the United States is dismissal with prejudice. The Department of Justice needs to abandon its rear-guard attempt to treat all conditions on waivers of sovereign immunity as "jurisdictional." It should recognize the modern understanding of the difference between "jurisdiction" and other norms. See *Collins v. United States*, 564 F.3d 833 (7th Cir. 2009). As we observed in *Collins*, some courts of appeals have been slow to understand the effect of *Irwin* and *Scarborough* and have continued to use the language of subject-matter jurisdiction. But in this circuit, at least, conditions on litigation against the United States may be "mandatory" without being "jurisdictional."

The Quiet Title Act requires action within 12 years after a claim accrues, and it adds: "Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States." This language could be read to say that the claim accrues as soon as a person knows that the United States claims title or any other interest in the real property. The Company knew of the national government's fee title much more than 12 years before filing suit. This would mean that any claim based on an easement accrues as soon as the United States acquires title to land that is subject to an (asserted) easement.

But the statute has not been understood in this way. Instead courts say that the claim accrues when a person knows, or in the exercise of reasonable diligence should have known, that the United States maintains a claim *adverse* to the plaintiff's. See *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 770 (4th Cir. 1991); *Bank One Texas v. United States*, 157 F.3d 397, 402 n.11 (5th Cir. 1998); *Spirit Lake Tribe v. North Dakota*, 262 F.3d 732, 738 (8th Cir. 2001); *Kingman Reef Atoll Investments, L.L.C. v. United States*, 541 F.3d 1189, 1198 (9th Cir. 2008); *Knapp v. United States*, 636 F.2d 279, 283 (10th Cir. 1980). The United States is content with this understanding, so we need not decide whether it is correct. (The ability to avoid unnecessary adjudication is one benefit of holding that a statute of limitations does not concern subject-matter jurisdiction. If the rule really were jurisdictional, we could not accept the United States' concession on this or any other issue.)

Nor need we resolve whether an easement arising by prescription is covered by 28 U.S.C. §2409a(n), which forbids any claim against the United States based on adverse possession. The idea behind §2409a(n) is that the United States owns vast tracts of wilderness and may not discover squatters—let alone people who graze cattle or inundate federal land intermittently—within the usual time for interests to vest by adverse possession. Ranchers, road or trail builders, and dam owners know what they are doing and may alert the United States and get easements in writing rather than hope that a right will arise by prescription. For its part, the Company says that §2409a(n) deals only with claims of title, as opposed to claims of easements; we need not decide, for this suit is untimely.

We may assume, as the Company asserts, that no one at the Forest Service has ever flatly asserted that the Company is forbidden to flood federal lands (as the Company says it has been doing since its first dam was built in 1907). But the time starts under §2409a(g) with notice of a problem as well as with actual knowledge of an adverse claim. The Forest Service maintains, and the district court held, that filings in the course of pro-ceedings before the Commission put the Company on what is called "inquiry notice": that is, the Forest Service said enough to lead a reasonable person to conclude that the claim of easement was open to question, and thus to prompt inquiry. That sort of knowledge is enough to start the period of limitations. See *United States v. Kubrick*, 444 U.S. 111 (1979); *Holmberg v. Armbrecht*, 327 U.S. 392 (1946); *Kirby v. Lake Shore & Michigan Southern R.R.*, 120

U.S. 130 (1887); cf. *United States v. Mottaz*, 476 U.S. 834 (1986).

None of the Forest Service's submissions in the re-licensing proceeding conceded that the Company has any right, by prescription or otherwise, to inundate federal lands. Several of the submissions asserted that the Company may establish an easement only by an action under §2409a. For example: "Further, absent bringing an action pursuant to 28 U.S.C. 2409a, [the Company] cannot maintain . . . that the United States' title is burdened by flowage easements gained by prescription. . . . Moreover, the above discussion assumes, for the sake of argument only, that all of the National Forest System lands within the project are burdened with flowage rights." These and similar passages should have led lawyers representing the Company to understand that its claim of flowage easements had not been acknowledged and was a subject of potential dispute. That's enough to prompt inquiry. The Company had 12 years to negotiate for written easements or to file suit—as the Forest Service invited it to do. For 12 years and 4 months it did neither. That delay lies on the Company's own doorstep.

The Company contends that the clock does not start until the United States uses land in a way incompatible with the private claim—for example, building a dike that blocks the flow of water or a fence that turns away the flock of sheep. This argument is incompatible with the rule, stated in §2409a(g) and (k), as well as in the cases we have cited, that it is the private party's knowledge

(actual or constructive), rather than the United States' bulldozers or other physical activity, that causes a claim to accrue. Someone who wants a legal right to use land owned by the United States must act to vindicate the claim; the United States need not evict the interloper by force.

The judgment of the district court is modified to be a dismissal with prejudice, rather than for lack of subject-matter jurisdiction, and as so modified is affirmed.