In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-2410

JESSIE WILLIAMS,

*Plaintiff-Appellant,*

*v.*

JERRY FLEMING, individually
and in his official capacity,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:07-cv-04672—**Rebecca R. Pallmeyer**, *Judge.*

ARGUED NOVEMBER 30, 2009—DECIDED FEBRUARY 26, 2010

Before KANNE, ROVNER, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.* Jessie Williams was a customer of Family Bank & Trust Company in Illinois. Following a Federal Deposit Insurance Corporation (FDIC) routine examination in late 2005, Family Bank stopped making loans to Williams, supposedly at the behest of FDIC Associate Examiner Jerry Fleming. The alleged catalyst for Fleming's decision was a racially motivated bias

against Williams and other African-Americans. In response, Williams sued Family Bank, the United States, and Fleming, alleging various causes of action arising under the Constitution, state law, and the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-80 (1946). The district court dismissed the claim against Family Bank because Family Bank was not a state actor, as is required for a properly pled Fifth Amendment violation. It also dismissed the claim against the United States because the FTCA expressly exempts the United States from suit in slander actions. As a consequence of the FTCA dismissal, the district court found that the FTCA's judgment bar applied to prohibit Williams's remaining *Bivens* suit against Fleming, resulting in a dismissal of his third and final claim from federal court. It is the dismissal of Fleming on the basis of the judgment bar that Williams challenges on appeal. We affirm.

## I. BACKGROUND

Jessie Williams was a customer of Family Bank with close to three million dollars in outstanding personal and business loans. In late 2005, the FDIC, led by Associate Examiner Jerry Fleming, conducted a routine safety and soundness examination at Family Bank. At the time of the examination, Williams was in good standing and had never been late with a payment.

Williams alleges that during the examination, Fleming made racially discriminatory statements to Family Bank's President, James Zaring, about the city of Harvey, Illinois, and about the bank's practice of initiating loans in the

predominantly African-American suburb. Fleming and other FDIC employees also supposedly made racially disparaging remarks about Williams specifically. Williams alleges that during this examination, Fleming ordered Zaring and Family Bank to refuse all further loans to Williams and other members of his community because of their race.

Williams alleges that as a result of these statements and the directive issued by Fleming, any subsequent loan applications that Williams submitted were not considered in the ordinary course of business and were instead denied immediately. Williams claims to have been denied credit by several other banking institutions as a direct result of Fleming's actions.

Williams filed a second amended complaint in April 2008 asserting a claim against Family Bank arising under the Fifth Amendment; a claim against Family Bank and, through the FTCA, against the United States, the basis of which was the Illinois Human Rights Act, which makes it a civil rights violation for a "financial institution" to unlawfully discriminate in the provision of credit; and a *Bivens* claim against Fleming based on the Fifth Amendment.

The district court dismissed Family Bank from the suit because it could not violate the Constitution as a non-state actor. The district court also granted the United States' motion to dismiss the FTCA claim against it in July 2008, finding that the FTCA's reservation of sovereign immunity in 28 U.S.C. § 2680(h) was applicable because it prohibits suit against the United

States for "[a]ny claim arising out of . . . abuse of process, libel, slander, misrepresentation, deceit, or interference with contractual rights." In determining the applicability of § 2680(h), the district court characterized Williams's claim as one for slander, because no independent tort of racial discrimination exists under Illinois law, and the essence of the claim alleged fit best under the rubric of slander. The district court found that, in any case, the FDIC did not act as a financial institution with regard to Williams,[1] so Williams failed to state a claim under state law, which is a prerequisite to an FTCA claim. *See, e.g.*, *Doe v. United States*, 976 F.2d 1071, 1082-83 (7th Cir. 1992) (dismissing an FTCA claim because Illinois no longer recognized the underlying state tort of seduction).

In November 2008, Fleming filed a motion to dismiss based on the FTCA's judgment bar, 28 U.S.C. § 2676, arguing that the court's FTCA judgment for the United States barred Williams's individual capacity claim against Fleming. In April 2009, the district court granted the motion to dismiss, finding that the FTCA's judgment bar was applicable. It reached this conclusion by referencing our decision in *Hoosier Bancorp of Indiana v. Rasmussen*, 90 F.3d 180 (7th Cir. 1996), where we affirmed a district court decision that concluded that a dismissal based on the discretionary function exception contained in

---

[1] The district court did not address the question of whether the FDIC could ever be a financial institution. Because it found that the FDIC did not act as a financial institution in this instance, it prudently reserved judgment on that broader question.

§ 2680(a) was a "judgment" for purposes of § 2676.[2]
Because a "judgement" is all that § 2676 requires as a
prerequisite to its operation, the district court in the
instant case similarly found that a dismissal on the basis
of § 2680(h) was a judgment, thereby barring Williams's
*Bivens* claim. This appeal followed.

## II. ANALYSIS

Generally, an individual may not sue the United States
for tortious conduct committed by the government or
its agents. *United States v. Navajo Nation*, 129 S. Ct. 1547,
1551 (2009) ("The Federal Government cannot be sued
without its consent."). In 1946, Congress created the
FTCA, one purpose of which was to compensate indi-
viduals by allowing suit against the United States for
torts committed during the commission of a federal em-
ployee's official duties. *See* 28 U.S.C.A. § 2671, Stat. Notes,
Sec. 2 of Pub. L. 100-694(b). But, understanding the impor-

---

[2] We did not have occasion in *Hoosier Bancorp* to address
specifically whether a judgment granted on the basis of § 2680
was a judgment for purposes of the judgment bar statute.
Instead, we focused on whether a judgment must be favorable
for the judgment bar to apply. 90 F.3d at 184-85. But, because
we affirmed the dismissal based on the application of the judg-
ment bar, Fleming and the district court concluded in the
instant case that *Hoosier Bancorp* supports the proposition that
*any* dismissal, whether or not on the merits, suffices for ap-
plication of § 2676. We need not address this contention today
because of our resolution of the case.

tance of sovereign immunity, Congress chose to limit the types of tortious conduct for which the government could be sued. *See Brandes v. United States*, 783 F.2d 895, 896 (9th Cir. 1986). Not only does the FTCA reserve the government's immunity for specifically enumerated torts, 28 U.S.C. § 2680, but also it provides various procedural mechanisms that help preserve sovereign immunity, *see, e.g.,* 28 U.S.C. §§ 2675-77. One such mechanism is the judgment bar, found at 28 U.S.C. § 2676.

The judgment bar recognizes that the purpose of sovereign immunity is to protect the United States not simply from the financial consequences of suit, but also from the burden of defending against suit. *See, e.g.*, *Hoosier Bancorp*, 90 F.3d at 184. Accordingly, the judgment bar provides: "The judgment in an action under section 1346(b) of this title shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." 28 U.S.C. § 2676. The judgment bar therefore preserves sovereign immunity by protecting the United States from defending against separate lawsuits arising from the same conduct. *Gasho v. United States,* 39 F.3d 1420, 1437 (9th Cir. 1994).

Although we held in *Hoosier Bancorp* that " '*any* FTCA judgment, regardless of its outcome, bars a subsequent *Bivens* action on the same conduct that was at issue in the prior judgment,' " 90 F.3d at 185 (*quoting Gasho*, 39 F.3d at 1437), that case focused on whether a judgment must have been favorable for application of the judgment bar. *Id.* We have not yet addressed the precise

question of whether a judgment under the FTCA must be "on the merits" for the judgment bar to apply. Nor do we reach that question today.

Instead, we base our decision on our holding in *Collins v. United States*, 564 F.3d 833, 838 (7th Cir. 2009), where we explained that the exceptions contained in § 2680 are mandatory rules of decision rather than restrictions on a court's subject matter jurisdiction. *See also Reynolds v. United States*, 549 F.3d 1108, 1111-12 (7th Cir. 2008) ("'The statutory exceptions enumerated in § 2680(a)-(n) to the United States's waiver of sovereign immunity . . . limit the breadth of the Government's waiver of sovereign immunity, but they do not accomplish this task by withdrawing subject-matter jurisdiction from the federal courts.'" (*quoting Parrott v. United States*, 536 F.3d 629, 634 (7th Cir. 2008)).

Because we are reviewing the district court's interpretation of the judgment bar *de novo*, *Manning v. United States*, 546 F.3d 430, 432 (7th Cir. 2008), we may affirm on any ground supported in the record, *Hager v. City of West Peoria*, 84 F.3d 865, 872 (7th Cir. 1996); *see also Roland v. Langlois*, 945 F.2d 956, 962 n.11 (7th Cir. 1991). Although we ultimately agree with the district court's resolution of the case, we reach that outcome through different reasoning. The district court held that the dismissal of the suit against the United States under § 2680(h) was for lack of subject matter jurisdiction. We disagree.

In *Collins*, we discussed our approach to dealing with the exceptions listed in § 2680. We noted that ours is a minority position, but nevertheless held firm in our

conviction that ours is the correct one. 564 F.3d at 837. We explained that characterizing the § 2680 exceptions as jurisdictional is problematic for a few reasons. First, the nature of sovereign immunity itself compels this conclusion. *Id.* at 837-88. Because the legislature is not required to consent to suit, any consent to suit must be done statutorily. As a result, "'to say that Congress has authorized the federal courts to decide a class of disputes is to say that subject-matter jurisdiction is present.'" *Id.* at 838 (*quoting United States v. T & W Edmier Corp.*, 465 F.3d 764, 765 (7th Cir. 2006)). Therefore, by authorizing federal courts to hear FTCA claims, Congress has given us subject matter jurisdiction over the entire class of cases involving torts claims against the federal government.

Second, we noted the illogic of the argument that the federal courts do not have jurisdiction to decide cases arising under § 2680. "Obviously the federal courts are authorized to decide suits under the Federal Tort Claims Act; indeed, no other court system is." *Id.* If in fact federal courts could not decide FTCA cases, the statute would be a nullity, because no decision-maker would be authorized to hear these cases.

Finally, we explained that the confusion of whether the § 2680 exceptions were jurisdictional perhaps stemmed in part from cases treating defenses to liability as "an automatic corollary of the [FTCA's] constituting a waiver of the federal government's sovereign immunity from suit," rather than analyzing the issue as distinct from jurisdictional analysis. *Id.* at 837. This argu-

ment is problematic for an obvious reason—it confuses jurisdiction, or the court's *power* to decide a case, with defenses, or the government's *exceptions* from suit.

Instead, our position recognized that the proper inquiry is not one of jurisdiction, but whether the United States has a defense to suit. In conducting this analysis, lower courts should scrutinize the cause of action, and if a § 2680 exception applies, then courts should relieve the United States from the burden of defending against a lawsuit. The rationale for this dismissal is not that the court lacks jurisdiction over the FTCA issue, but that the United States has a defense that relieves it from suit.

Because the cause of action in this case was dismissed pursuant to § 2680(h), we hold that the claim was not dismissed for lack of jurisdiction, but for the existence of a defense. Therefore, the dismissal was on the merits, and the determination that the judgment bar prevented Williams's remaining *Bivens* action was correct.

### III. CONCLUSION

Because William's suit against the United States was on the merits, and not for lack of subject matter jurisdiction, his remaining *Bivens* suit was properly barred by section § 2676 of the FTCA. The dismissal of Williams's claim against Fleming is AFFIRMED.