NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 31, 2011[*]
Decided September 12, 2011

**Before**

RICHARD A. POSNER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 10-3517

| | |
|---|---|
| PAUL S. DENTON, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v.* | No. 08 C 4485 |
| UNITED STATES OF AMERICA, | James F. Holderman, |
| *Defendant-Appellee*. | *Chief Judge*. |

**O R D E R**

Federal inmate Paul Denton was being transported between prisons when the government-operated plane carrying him was damaged during an emergency landing. In this action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2674, and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), Denton alleges that he was injured while evacuating the aircraft but denied appropriate medical care. At summary

---

[*]After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

judgment the district court dismissed the suit on the grounds that Denton had not timely submitted an FTCA administrative claim, and had not timely filed his *Bivens* claim or sued any individual defendants. Denton appeals, and we affirm the judgment.

The significant facts are undisputed. The district court deemed the factual assertions in the government's statement of facts admitted because Denton did not respond to the statement. *See* N.D. Ill. R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009); *Cracco v. Vitran, Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). Denton was arrested in July 2003, charged with bank robbery in the Eastern District of Missouri, and held in county jails in Missouri while his criminal case was pending. He suffers from schizophrenia, and in September 2003 the district judge ordered a competence evaluation, which was to be conducted at a federal facility in Minnesota. Denton was en route to Minnesota on October 1, 2003, when his plane experienced mechanical difficulties, was diverted to O'Hare International Airport, and was damaged when the nose gear collapsed on landing. Deputy marshals on the flight activated the emergency chutes and evacuated the inmates from the plane. The inmates were then bussed to the Metropolitan Correctional Center in Chicago and housed there temporarily.

Within days of the crash Denton continued on to Minnesota, where he was evaluated. Upon returning to Missouri he was found competent to stand trial, and in April 2004 he pleaded guilty to the pending charges. After his sentencing he was transferred to Terre Haute on September 1, 2004, and remained there until December 2006. His last transfer was to a federal prison in Memphis, where he is currently housed.

Denton was placed in segregation for two days in October 2003 and three days in February 2007. In between he worked in the Bureau of Prisons's education department from September 2004 to March 2005 and held other jobs from March 2005 to December 2006. According to a BOP medical director who reviewed Denton's records, the medications he takes for his schizophrenia and a seizure disorder would not have "rendered him incompetent or incapacitated."

Denton wrote to the BOP Central Office in December 2003 stating that he wished to file a tort claim related to the plane crash on October 1, 2003. He said he had asked, while housed in Missouri, about the "federal tort form" but was told that the institution did not have access to the form. He never received a response from the Central Office. In a second letter, sent August 2, 2004, Denton wrote that he still needed the claim form to "finally file [his] request for damage inflicted by the federal government." Again he received no response. The BOP has no record of ever having received the letters. Denton avers that he

mailed the letters but does not say whether he affixed the proper postage or used the prison mailing system.

Denton eventually filed an administrative claim with the BOP on October 22, 2006. He used a Standard Form 95 and, misstating the date of the plane crash as "mid-August 2004," claimed that he injured his back and neck when the deputy marshals shoved him down the emergency chute without first removing the chains from his hands and legs. Afterward, he said, his request to go to a hospital was denied, and within the next few days he received the wrong seizure medication at the MCC in Chicago. The BOP sent Denton an acknowledgment that his "properly completed claim" had been received. Six months later, on April 26, 2007, his administrative claim was denied after the BOP concluded that he did not suffer any personal injury as a result of negligence by its employees. The correspondence denying his claim also informed Denton that he had six months to file suit in the district court.

Denton filed his civil complaint on October 7, 2007, naming as defendants only the United States, the Marshals Service, and the BOP. Tracking his administrative claim, Denton asserted that he injured his back and neck during the evacuation from the plane and in the following days was refused emergency medical treatment and given the wrong seizure medication. The drug mixup, he explained, had caused convulsions, shortness of breath, and caused him to faint. He also alleged emotional injuries based on the shock and fright the accident caused. He did not allege a denial in medical treatment after those first few days at the MCC in Chicago.

After discovery the government moved for summary judgment. It argued that the FTCA claim should be dismissed because Denton's administrative claim had been untimely. And the *Bivens* claim should be dismissed, the government continued, both because it was filed outside the two-year statute of limitations applicable to civil-rights claims arising in Illinois and because no individual defendants had been sued. In response Denton did not dispute that the deadline for submitting an administrative claim was October 1, 2005, two years after the accident. 28 U.S.C. § 2401(b). He argued, however, that the period for submitting his claim should be deemed tolled from October 1, 2003, to September 1, 2004, because, he insisted, the delay in presenting his claim was "positively caused by the actions and inactions" of the BOP employees. Denton cited his transfers between prisons, his brief placements in segregation, and the medications he was taking to explain his inaction. In addition to this argument for equitable tolling, Denton asserted that the district court should apply to his FTCA claim an outdated Illinois statute that, before its amendment in 1991, had tolled for incarcerated plaintiffs the limitations period governing personal-injury claims. *See* ILL. REV. STAT. ch. 110 ¶ 13-211 (1989). He said nothing at all about the deficiencies identified by the government in his *Bivens* claim.

The district court concluded that the undisputed evidence established that Denton was barred from seeking relief under the FTCA because he had failed to timely submit a claim after the nose-down landing. Denton's letters to the BOP Central Office, the court reasoned, showed that he was fully aware of his injuries and as early as December 2003 knew that he must present an administrative claim and was capable of sending correspondence to the BOP. The court also agreed with the government that the *Bivens* claim was barred by the statute of limitations and, in any event, subject to dismissal because Denton had not sued any individual defendants.

Before we turn to the arguments presented by Denton, there are two points overlooked by the parties that are worth mentioning. First, Denton could have argued that the government waived any entitlement to contend that his administrative claim was time-barred since the BOP responded to that claim "on the merits." We have held that the FTCA's exhaustion requirement is not jurisdictional, *see Collins v. United States*, 564 F.3d 833, 837-38 (7th Cir. 2009); *Parrott v. United States*, 536 F.3d 629, 634-35 (7th Cir. 2008), and that the statute of limitations is an affirmative defense, *see McCall v. United States*, 310 F.3d 984, 987 (7th Cir. 2002). The BOP sent Denton a letter stating that it had received his "properly completed claim." And when the BOP denied his claim, the agency did not mention timeliness. Rather, the claim was denied as a result of an "investigation," which, according to the BOP's correspondence, revealed that Denton had not suffered injury as a result of negligence by BOP employees. In analogous contexts we have concluded that a claimant's failure to comply with an administrative deadline will not be fatal if the agency accepts the filing as timely and resolves it on the merits. *See Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005) (analyzing requirement of administrative exhaustion under Prison Litigation Reform Act); *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) (same); *Volovsek v. Wis. Dep't of Agric., Trade and Consumer Prot.*, 344 F.3d 680, 687 (7th Cir. 2003) (analyzing requirement of administrative exhaustion under Title VII of the Civil Rights Act of 1964); *Gibson v. West*, 201 F.3d 990, 993-94 (7th Cir. 2000) (same); *Charlie F. v. Bd. of Educ. of Skokie Sch. Dist. 68*, 98 F.3d 989, 991 (7th Cir. 1996) (analyzing requirement of administrative exhaustion under Individuals with Disabilities Education Act). As yet, no court has applied the same logic to the FTCA but the very point of that statute's exhaustion requirement is to give agencies an opportunity to resolve claims without litigation. *See McNeil v. United States*, 508 U.S. 106, 112 n.7 (1993); *Warrum v. United States*, 427 F.3d 1048, 1050 (7th Cir. 2005). It would be sensible then to conclude that the exhaustion requirement of the FTCA can be satisfied by an untimely claim so long as the agency addresses it on the merits. This case is not the appropriate vehicle to decide that question, however, because Denton has never argued the point.

Additionally, we have considered whether Denton might have timely presented his claim by sending letters to the BOP Central Office in December 2003 and August 2004. By

regulation, a claim is considered presented when the agency receives, from the claimant or a legal representative, "an executed Standard Form 95 *or other written notification of an incident*, accompanied by a claim for money damages." 28 C.F.R. § 14.2(a) (emphasis added). Denton's letters included a limited statement of the facts, and although neither incorporated a monetary demand, we have expressed doubt whether the requirements of § 14.2 can be applied strictly. *See Kanar v. United States*, 118 F.3d 527, 530-31 (7th Cir. 1997). All that is required, we have held, is a written notification containing a statement of the essential facts sufficient to allow a legally trained reader to infer the legal cause of action. *Palay v. United States*, 349 F.3d 418, 425-26 (7th Cir. 2003); *Murrey v. United States*, 73 F.3d 1448, 1452-53 (7th Cir. 1996). Denton's letters, therefore, arguably satisfy this threshold. But even had the letters sufficed as administrative presentment, Denton's civil complaint was still untimely. An agency has six months to respond before silence equals a denial. 28 U.S.C. § 2675(a). Denton's last letter was sent in August 2004; the BOP's silence would have signaled a denial in February 2005, and Denton then would have had to file his complaint in the district court by August 2005, within six months of the denial. *Id.* § 2401(b). Because he did not file his civil complaint until October 7, 2007, his lawsuit would have been almost two years late in meeting the second part of the statute of limitations. Thus Denton could not benefit from viewing his letters as administrative claims.

With those points aside we turn to the points that Denton raises. He insists that he "was disable[d] by virtue of his incarcerations" and thus his failure to present an FTCA administrative claim within the two-year statutory window should have been excused. Again he bases this argument partly on the outdated Illinois tolling provision, which he argues should apply to the FTCA. And for the first time, Denton asserts that he "should have been allowed" to amend his complaint to name individual defendants in the *Bivens* claim.

The latter point merits little discussion. Denton's lawsuit was pending in the district court for 34 months, and never during that period did he seek leave from the district court to add additional defendants. More importantly, his *Bivens* claim was already barred by the two-year statute of limitations even before it was filed. *See Bontkowski v. Smith*, 305 F.3d 757, 760, 762 (7th Cir. 2002); *Delgado-Brunet v. Clark*, 93 F.3d 339, 342 (7th Cir. 1996). Denton does not dispute that the *Bivens* claim was untimely, so amending his complaint to add individual defendants would have been a futile gesture.

As for the FTCA claim, district courts are authorized to hear cases against the United States through a limited waiver of sovereign immunity. 28 U.S.C. §§ 1346(b), 2671-2680. The administrative exhaustion and timing requirements are also set out by statute. *Id.* §§ 2401(b), 2675(a). Denton had two years to present an administrative claim to the appropriate federal agency, *id.* § 2401(b), and he does not dispute that his injuries occurred

and his claim accrued in October 2003. Failure to exhaust administrative remedies before bringing a suit under the FTCA mandates dismissal. *McNeil v. United States*, 508 U.S. 106, 113 (1993). Denton did submit an administrative claim, and it was denied before he filed suit, so the issue here concerns only the timing of that administrative claim. Courts have recognized that the two-year deadline in § 2401(b) is subject to equitable tolling. *See Santos v. United States*, 559 F.3d 189, 195-97 (3d Cir. 2009); *Patterson v. United States*, 451 F.3d 268, 271 n.1 (1st Cir. 2006); *McCall v. United States*, 310 F.3d 984, 987-88 (7th Cir. 2002); *Hoosier Bancorp of Ind., Inc. v. Rasmussen*, 90 F.3d 180, 183 (7th Cir. 1996). Generally, equitable tolling excuses an untimely submission if, despite the plaintiff's exercise of reasonable diligence, some extraordinary circumstance prevented him from meeting the prescribed deadline. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Santos*, 559 F.3d at 197; *Hoosier Bancorp of Ind., Inc.*, 90 F.3d at 183.

But Denton did not substantiate his assertion that he was under a disability, and his actions while incarcerated undercut any suggestion that he was unaware of his obligation to file the administrative claim, or unable to fulfill that obligation because of mental incapacity. The letters he sent in December 2003 and August 2004 show that he was aware of his injuries, that he intended to seek redress from the government, and that he knew he must submit an administrative claim as the next step. Those letters do not hint at Denton being incapacitated by a mental impairment, and in fact they bookend the April 2004 determination that he was competent to stand trial. Moreover, a BOP medical director examined Denton's medical records and opined that the type and dosage of the drugs he was taking would not have "rendered him incompetent or incapacitated." Denton did nothing to dispute any of this evidence.

Denton's assertion that he was unable to obtain the proper form while he was housed in Minnesota could be construed as an argument that the BOP impeded his ability to present his administrative claim. But Denton left Minnesota in August 2004, and he did not allege, or attempt to prove, that anyone denied him a claim form after his brief stay in Minnesota. So there is no evidence that BOP employees thwarted Denton from submitting his administrative claim, and otherwise he did not establish extraordinary circumstances or the due diligence necessary for equitable tolling. All Denton said at summary judgment is that he verbally inquired about how to present his administrative claim but "due to the constant transfers, he never received the information." Of course Denton was not transferred constantly—he was at Terre Haute from September 2004 until December 2006—but, regardless, being transferred between facilities is not an extraordinary circumstance. *See Dodd v. United States*, 365 F.3d 1273, 1283 (11th Cir. 2004); *Montenegro v. United States*, 248 F.3d 585, 594 (7th Cir. 2001), *overruled in unrelated part by Ashley v. United States*, 266 F.3d 671, 674-75 (7th Cir. 2001). Denton sent his last letter asking how to submit a claim in August 2004 and did not receive a response. Yet, as far as this record shows, he was

moved to Terre Haute weeks later but then did nothing until he submitted his administrative claim more than two years later in October 2006. Even if Denton had shown that circumstances prevented him from taking action before he reached Terre Haute, the application of equitable tolling would not excuse his further delay after the circumstances he blames for his inaction had ended. *See Fidelity Nat'l Title Ins. Co. of N.Y. v. Howard Sav. Bank*, 436 F.3d 836, 839 (7th Cir. 2006); *Unterreiner v. Volkswagen of Am., Inc.*, 8 F.3d 1206, 1213 (7th Cir. 1993).

Finally, Denton asks that we apply an outdated Illinois statute, which until its amendment in 1991 tolled the state's personal-injury statute of limitations during a period of incarceration. But the FTCA has its own exhaustion rule and limitation periods and does not borrow from state law. *Goodhand v. United States*, 40 F.3d 209, 213 (7th Cir. 1994).

AFFIRMED.